IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| LAWRENCE J. HARRIS, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:09cv1165 (GBL/TCB) |
| ) | |
| RUPPERT NURSERIES, INC., ) | |
| ) | |
|     Defendant. ) | |
| ) | |

## AMENDED COMPLAINT

Plaintiff Lawrence J. Harris, by counsel, pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), states as follows for his Amended Complaint against Ruppert Nurseries, Inc.:

### PARTIES

1. Plaintiff Lawrence J. Harris ("Harris") is an adult individual and a resident of Loudoun County, within the Eastern District of Virginia.

2. Defendant Ruppert Nurseries, Inc. ("Ruppert") is a Maryland corporation with its principal place of business in Maryland.  Ruppert is engaged in the provision of lawn and landscaping services, including the provision of labor, material, and, where necessary, design services, throughout the East Coast, including the Commonwealth of Virginia.

### JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. section 1332(a)(1) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      Venue is proper under 28 U.S.C. section 1391(a)(1) as Ruppert resides in this judicial district because it does business here and is therefore subject to personal jurisdiction at the time the action was commenced.

## FACTS

5.      On or about June 18, 2008, Harris and Ruppert entered into a contract of employment whereby Harris was hired as an "Enhancement Manager."  On that date, Ruppert made an offer of employment to Harris that included a base salary, a benefits package, (including vacation and sick leave, paid holidays, health and dental insurance, and a 401(k) plan), a bonus based on the profitability of his branch, and a company car with company provided gas.  On that same date, Harris accepted the offer.

6.      Harris had previously been employed by Ruppert from 1988 to 1997 and was familiar with the company, its executives, and its prior commitment to ethical business practices.

7.      As part of his previous service to Ruppert, Harris had his performance reviewed on numerous occasions and had always received satisfactory evaluations, routinely receiving a raise as a result.

8.      Since rejoining Ruppert in 2008, Harris has not had a single performance evaluation, despite Ruppert's agreement to such reviews thirty days after his start date and annually beginning in January, 2009.

9.      Ruppert holds itself out as a highly ethical company that promotes those values among its employees.  For example, Ruppert trumpets its various awards, most prominently a 2007 National Capital Business Ethics Award.  According to a January 2008 Ruppert press release, recipients of that award had to prove a "[company-wide] commitment to business ethics, give specific examples of the implementation of a corporate code of conduct and offer clear

communication that set expectations for ethical behavior." According to that same press release, CEO Craig Ruppert credited his employees with creating the company values that led to the award:

> Our employees have helped to create our company values and live them every day. We invest significantly in our people development—empowering employees with the skills they need to make educated, responsible and grounded decisions—and trust that they will make good decisions for our company, our customers and our community. Time after time they do just that.

10. Having previously worked for Ruppert, Harris was well aware of the company's commitment to the highest levels of ethical behavior.

11. Unfortunately, Harris would discover Ruppert's actual commitment to ethics and professionalism did not match its public pronouncements.

12. As enhancements manager, Harris became responsible in 2009 for a contract with the University of Maryland at its Baltimore campus ("UMBC"), a member of the University System of Maryland.

13. As part of Harris's duties, he was required to interact with the customer, supervise Ruppert's efforts, and invoice UMBC for certain landscaping services (not including routine, fixed-fee lawn maintenance services).

14. Under Ruppert's contract with UMBC, in addition to labor charges, Ruppert was entitled to be compensated at a rate of sixty-five percent over the <u>actual cost</u>, including discounts, of flowers and plants that Ruppert obtained from its vendors. As an example, if Ruppert paid a vendor $1.00 for a flower, it was entitled to bill and to receive $1.65 from UMBC.

15. In May 2009, after an initial meeting between Ruppert and UMBC representatives, including UMBC representative Ted Warner, Harris was approached outside

3

Warner's office by Chuck Whealton, Ruppert's Regional Director of Business Development. Whealton stated to Harris if he needed help with billing, Harris should let Whealton know because his team previously provided services to UMBC "back in the day." He further stated, "This job is a billing nightmare the way you have to bill it. You should have seen the enhancement manager's files. He had two huge folders this thick [indicating], one without discounts and one with actual invoices." Harris did not respond.

16. After the first round of labor and materials under the contract was supplied by Ruppert in the summer of 2009, Harris prepared to bill UMBC pursuant to the contract. At that time, he was told by his branch manager John Harich to instruct the vendors not to show Ruppert's volume discount "on any invoices going to UMB." In other words, Harich was instructing Harris to obtain false or dummy invoices from the vendors so that Ruppert could submit those to UMBC in order to fraudulently inflate Ruppert's revenue.

17. Harris immediately questioned the integrity of that scheme. In response, Harich told him to "call Chuck."

18. Harris then called Chuck Whealton and left a message. He did not receive a response.

19. Several days later, Harris told John Harich they needed to decide what to do with the UMBC billing because it had to go out. Harich responded that Harris should talk to Scott Distasio (a Ruppert Area Manager) to see what he thought. Harris did so. Distasio justified sending "dummy invoices" because "that's the way Ruppert did it in the past." He further stated that Ruppert did not get paid for travel time from Frederick to Baltimore "so we're losing a minimum of six hours every time we go there. How fair is that? It all works out the way it's supposed to in the end."

20. Harris reported Distasio's comments to Harich and objected to submitting dummy invoices to UMBC. He further stated he did not want any part in it.

21. Harris then finally received a belated call from Chuck Whealton who asked Harris what the problem was. Harris stated that he objected to the proposed method of billing UMBC with dummy invoices that did not reflect Ruppert's true cost of supplies.

22. Whealton responded that Harris should use a separate purchase order book and tell Ruppert vendors not to give the customary discount for purchase orders within that numbered series of purchase orders.

23. Harris questioned why that made sense as it would produce the same profit (namely 65%). Whealton responded that Harris was correct but Harris should "do the math." He further explained that 65% of $200.00 was more than 65% of $120.00 and that "it just gives us more money to balance out the fact that we don't get paid for travel and all the other little quirks we have to deal with on this job." Whealton then apologized for the "confusion" and stated that if Harris had any other questions, he should feel free to call him.

24. On Friday, July 10, 2009, at 2:56 p.m., John Harich requested Greenstreet Growers, Inc., a vendor on the UMBC job, to reinvoice Ruppert for materials supplied "[without] the Ruppert Discount."

25. On July 24, 2009, Harris was terminated as a direct and proximate result of his refusal to participate in Ruppert's proposed false, fraudulent, and felonious billing of UMBC.

### COUNT 1:  BREACH OF CONTRACT

26. The previous allegations are incorporated.

27. Harris and Ruppert entered into a contract as set forth above.

28. Ruppert breached the contract by terminating Harris.

29. As a direct and proximate result of the breach, Harris has been and continues to be damaged.

WHEREFORE, Plaintiff Lawrence J. Harris requests judgment in his favor and against Ruppert Nurseries, Inc. in the amount of one hundred fifty thousand dollars, plus prejudgment interest, plus general relief.

## COUNT 2:  VIOLATION OF MD. CODE (2009), STATE FINANCE AND PROCUREMENT ART., § 11-301 ET SEQ.

30. The allegations of paragraphs 1 through 25 are incorporated.

31. Under Maryland law, those who defraud, attempt to defraud, or conspire to defraud state agencies in public procurement matters are guilty of a felony:

> (a)  In general. -- In connection with a procurement contract a person may not willfully:
>
>   (1) falsify, conceal, or suppress a material fact by any scheme or device;
>
>   (2) make a false or fraudulent statement or representation of a material fact; or
>
>   (3) use a false writing or document that contains a false or fraudulent statement or entry of a material fact.
>
> (b)  Aiding or conspiring with others. -- A person may not aid or conspire with another person to commit an act under subsection (a) of this section.
>
> (c)  Penalty. -- A person who violates any provision of this section is guilty of a felony and on conviction is subject to a fine not exceeding $ 20,000 or imprisonment not exceeding 5 years or both.

Md. Code (2009), State Finance and Procurement Art., § 11-205.1.

32. Such persons are also civilly liable for treble damages:

> A person who, for the purpose of defrauding the State, acts in collusion with another person in connection with the procurement process is liable for damages equal to 3 times the value of the loss to the State that is attributable to the collusion.

Md. Code (2009), State Finance and Procurement Art., § 11-205(b).

33. Employees of companies who report or who refuse to engage in schemes to defraud Maryland governmental entities in the procurement context are statutorily entitled to protection from retaliation:

> An employer may not take or refuse to take any personnel action as a reprisal against an employee because the employee:
>
> (1) discloses information that the employee reasonably believes evidences:
>
>     (i) an abuse of authority, gross mismanagement, or gross waste of money;
>
>     (ii) a substantial and specific danger to public health or safety; or
>
>     (iii) a violation of law;
>
> (2) objects to or refuses to participate in any activity, policy, or practice in violation of law; or
>
> (3) following a disclosure under item (1) of this section, seeks a remedy provided under this subtitle.

Md. Code (2009), State Finance and Procurement Art., § 11-303.

34. Here, Harris disclosed to his superiors and refused to participate in a clear violation of law that would have resulted in criminal and civil liability. As a direct result, and in violation of the statutory protection afforded employees in his position, he was fired.

35. As a result of his termination, Harris has suffered damages in the amount of two hundred fifty thousand dollars.

36. The actions of Ruppert in terminating Harris for refusing to engage in felonious and fraudulent behavior were taken with actual malice and intentionally to injure Harris. Accordingly, punitive damages are appropriate to deter Ruppert from engaging in further fraudulent and retaliatory behavior.

WHEREFORE, Plaintiff Lawrence J. Harris requests judgment in his favor and against Ruppert Nurseries, Inc. in the amount of two hundred fifty thousand dollars, plus one million dollars in punitive damages, plus prejudgment interest, plus attorneys' fees, plus all other relief permitted under Maryland Code, State Finance and Procurement Art., § 11-305.

COUNT 3:  WRONGFUL OR ABUSIVE DISCHARGE (ALTERNATIVE TO COUNT 2)

37. The allegations of paragraphs 1 through 25 are incorporated.

38. Under Maryland law, those who attempt to defraud state agencies in public procurement matters are guilty of a felony:

> (a)  In general. -- In connection with a procurement contract a person may not willfully:
>
>   (1) falsify, conceal, or suppress a material fact by any scheme or device;
>
>   (2) make a false or fraudulent statement or representation of a material fact; or
>
>   (3) use a false writing or document that contains a false or fraudulent statement or entry of a material fact.
>
> (b)  Aiding or conspiring with others. -- A person may not aid or conspire with another person to commit an act under subsection (a) of this section.
>
> (c)  Penalty. -- A person who violates any provision of this section is guilty of a felony and on conviction is subject to a fine not exceeding $ 20,000 or imprisonment not exceeding 5 years or both.

Md. Code (2009), State Finance and Procurement Art., § 11-205.1.

39. Such persons are also civilly liable for treble damages:

> A person who, for the purpose of defrauding the State, acts in collusion with another person in connection with the procurement process is liable for damages equal to 3 times the value of the loss to the State that is attributable to the collusion.

Md. Code (2009), State Finance and Procurement Art., § 11-205(b).

40. Here, Harris refused to participate in a clear violation of law that would have resulted in criminal and civil liability. As a direct result, and in violation of clearly articulated public policy, he was fired.

41. As a result of his termination, Harris has suffered damages in the amount of two hundred fifty thousand dollars.

42. The actions of Ruppert in terminating Harris for refusing to engage in felonious and fraudulent behavior were taken with actual malice and intentionally to injure Harris. Accordingly, punitive damages are appropriate to deter Ruppert from engaging in further fraudulent and retaliatory behavior.

WHEREFORE, Plaintiff Lawrence J. Harris requests judgment in his favor and against Ruppert Nurseries, Inc. in the amount of two hundred fifty thousand dollars, plus one million dollars in punitive damages, plus prejudgment interest, plus attorneys' fees, plus general relief.

## JURY DEMAND

Trial by jury is demanded as to all claims.

LAWRENCE J. HARRIS<br>By Counsel

WEBSTER BOOK LLP

By: /s/
   Steven T. Webster (VSB No. 31975)
   swebster@websterbook.com
   Aaron S. Book (VSB No. 43868)
   abook@websterbook.com
   Webster Book LLP
   300 N. Washington St., Suite 404
   Alexandria, VA 22314
   (888) 987-9991 (telephone and fax)
   *Counsel for Plaintiff Lawrence J. Harris*

<u>CERTIFICATE OF SERVICE</u>

  I certify that on November 19, 2009, I will file the foregoing with the Clerk of Court, who will then send a notice of electronic filing (NEF) to the following:

Karen A. Doner, Esquire
kdoner@williamsmullen.com
Thomas J. McKee, Jr., Esquire
tmckee@williamsmullen.com
Williams Mullen, P.C.
8270 Greensboro Drive, Suite 700
McLean, Virginia 22102

            /s/
          Steven T. Webster